FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 28, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT M,<br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　　　　　Defendant. | No. 2:17-cv-00363-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 17, 18 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 17, 18. The parties consented to proceed before a magistrate judge. ECF No. 8. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 17, and grants Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

ORDER - 1

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

1    If the claimant is not engaged in substantial gainful activity, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

4    "any impairment or combination of impairments which significantly limits [his]

5    physical or mental ability to do basic work activities," the analysis proceeds to step

6    three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this

7    severity threshold, however, the Commissioner must find that the claimant is not

8    disabled.  20 C.F.R. § 416.920(c).

9    At step three, the Commissioner compares the claimant's impairment to

10   severe impairments recognized by the Commissioner to be so severe as to preclude

11   a person from engaging in substantial gainful activity.  20 C.F.R. §

12   416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13   enumerated impairments, the Commissioner must find the claimant disabled and

14   award benefits.  20 C.F.R. § 416.920(d).

15   If the severity of the claimant's impairment does not meet or exceed the

16   severity of the enumerated impairments, the Commissioner must pause to assess

17   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

18   defined generally as the claimant's ability to perform physical and mental work

19   activities on a sustained basis despite his limitations, 20 C.F.R. § 416.945(a)(1), is

20   relevant to both the fourth and fifth steps of the analysis.

ORDER - 4

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 23, 2014, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of September 14, 2013. Tr. 91, 291-96. The application was denied initially, Tr. 224-27, and on reconsideration, Tr. 231-33. Plaintiff appeared before an administrative law judge (ALJ) on July 20, 2016. Tr. 81-132. On August 30, 2016, the ALJ denied Plaintiff's claim. Tr. 18-35.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 23, 2014. Tr. 24. At step two, the ALJ found that Plaintiff has the following severe impairments: bilateral degenerative joint disease of the knees, sleep apnea, asthma, obesity, gastroesophageal reflux disease (GERD), ulcerative reflux esophagitis, irritable bowel syndrome (IBS), fibromyalgia, affective disorder, and anxiety. Tr. 24.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25. The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

occasional climbing of ramps, stairs, and scaffolds; occasional balancing; and rare stooping, crouching, kneeling or crawling more than 15% of the time. [Plaintiff] will need a sit-stand option hourly for 5 minutes while at a workstation, and will use a hand held assistive device. [Plaintiff] can have occasional exposure to extreme cold, heat, and humidity; and occasional exposure to excessive vibrations, irritants, poor ventilation, moving machinery, and unprotected heights. [Plaintiff] must work in a position requiring no more than frequent routine judgment, defined as making simple work related decisions, and frequent simple workplace changes. [Plaintiff] needs work that requires no more than frequent exposure to the public, and no working in crowds. [Plaintiff] can frequently interact with supervisors and coworkers, and is unable to work at production rate jobs.

Tr. 27.

At step four, the ALJ found Plaintiff is able to perform past relevant work as a telephone solicitor. Tr. 33. In the alternative, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were additional jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, charge account clerk and printed circuit board assembly. Tr. 35. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of October 23, 2014, though the date of the decision. Tr. 35.

On September 15, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 17 at 1, 4.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 17 at 10-13.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2.[1] "First, the ALJ must determine whether there is objective

---

[1] At the time of the ALJ's decision on March 25, 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016). The

ORDER - 8

medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112. "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*.; *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v.*

---

ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded effective June 14, 2018, in favor of the more comprehensive SSR 16-3p. Neither party argued any error in this regard.

ORDER - 9

*Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(1)-(3). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms. Tr. 29.

*1. Inconsistent with the Objective Medical Evidence*

The ALJ found that the severity of Plaintiff's reported physical and mental-health symptoms were unsupported by the objective medical evidence. Tr. 29-30. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Here, as detailed by the ALJ, the objective medical evidence is inconsistent with Plaintiff's disabling claims. For instance, the medical notes from a May 2013 examination stated that Plaintiff did not have joint deformity, swelling, erythema, heat, or effusion, and he retained full range of motion bilaterally. Tr. 468. These notes also stated that Plaintiff's range of motion was limited by his body mass, not his joints. Tr. 468. In addition, imaging in May 2013 reflected only mild bilateral bicompartmental osteoarthrosis. Tr. 491. Regarding Plaintiff's asthma, tests and imaging reflected no acute cardiopulmonary disease and sinus rhythm was within normal limits. Tr. 496, 843, 1318. The ALJ also pointed to the objective medical evidence related to Plaintiff's sleep disorder, chronic pain, gastrointestinal and

bowel impairments. *See, e.g.*, Tr. 1562 (reporting that he is sleeping better); Tr. 476 (noting normal balance and gait and no skeletal tenderness or deformity); Tr. 543 (noting that Plaintiff ambulated down the hallway with no limp or pain behaviors); Tr. 560 (noting negative gastric emptying). The ALJ also highlighted the medical records that were inconsistent with Plaintiff's claim that his anxiety was disabling. *See, e.g.*, Tr. 536, 567-68 (Plaintiff's judgment, insight, reasoning, and attention are good, as well as affect appropriate and attitude cooperative.); Tr. 979 (noting that affect, judgment, and mood were normal); Tr. 1535, 1559 (noting that mood, affect, judgment, and memory were normal). It was the ALJ's role to weigh the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). The ALJ's finding that the objective medical evidence is inconsistent with Plaintiff's claim that his physical and mental conditions were disabling is rationale and supported by substantial evidence.

Plaintiff submits that the ALJ's statement that "the new and material evidence presented by [Plaintiff] for the instant proceeding warrants not adopting the [RFC] from" Plaintiff's prior disability-application opinion, contradicts the ALJ's finding that Plaintiff's conditions are not as disabling as Plaintiff claims. ECF No. 17 at 12 (citing Tr. 28). This argument is unpersuasive. The ALJ's finding that Plaintiff had additional severe impairments necessitating a new RFC is not inconsistent with the ALJ's finding that Plaintiff's reported symptoms were not

as severe has he claimed.  The step-two assessment of severe impairments is a

different assessment than the extent to which the severe impairments restrict the

Plaintiff's residual functional capacity—a step-three assessment.  20 C.F.R. §§

416.920, 416.945(a).

### 2.  Improvement with Treatment

The ALJ also found that Plaintiff's reported symptoms improved with

treatment.  Tr. 29.  The effectiveness of treatment is a relevant factor in

determining the severity of a claimant's symptoms.  20 C.F.R. § 404.1529(c)(3)

(2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (A favorable

response to treatment can undermine a claimant's complaints of debilitating pain or

other severe limitations.).  Here, the ALJ noted that Plaintiff's depression

symptoms and sleep disorders improved with medication.  Tr. 29 (citing Tr. 487

("You are improving very nicely."); Tr. 489-90 (noting that Plaintiff's affect was

improved given the medication change); Tr. 521 (noting improving in overall

appearance and that Plaintiff is not anxious).  Likewise, the ALJ found that

Plaintiff's physical pain was treated effectively with medication.  Tr. 30 (citing Tr.

487-89).  The ALJ reasonably concluded that the record showed a history of

improvement with treatment:  improvement which was inconsistent with the level

of impairment Plaintiff alleged. This was a clear and convincing reason to discount Plaintiff's symptom claims.

### 3. *Failure to Follow Treatment Recommendations*

The ALJ discounted Plaintiff's reported symptoms because he did not pursue recommended treatment. Tr. 30. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, the ALJ noted that Plaintiff failed to participate in the recommended healthy living workshop because, as Plaintiff reported, he "has just been sort of lazy and has not started it yet." Tr. 30 (citing Tr. 567). Also contrary to his providers' recommendations, Plaintiff was not interested in exercising or changing his eating habits. Tr. 1562, 1567. This record supports a finding that Plaintiff did not follow a prescribed course of treatment.

But relying on Yvonne Belcourt's opinion, Plaintiff submits that Plaintiff's treatment noncompliance was due to his affective disorder and anxiety disorder and therefore his noncompliance should not be used as a basis to discount his reported symptoms. ECF No. 17 at 12 (citing Tr. 446 and *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). However, as is discussed below, Ms. Belcourt stated that Plaintiff's physical condition—not his mental condition—contributed to

his untidy living conditions. Therefore, Ms. Belcourt's statements do not support an argument that Plaintiff's treatment noncompliance was the result of his mental health condition rather than a deliberate choice. The ALJ's interpretation of the record—that Plaintiff was not motivated to participate in treatment—is a rational interpretation. The ALJ's conclusion is entitled to deference. *See Orn,* 495 F.3d at 632 (citing *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)); *see also Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (noting "[w]here evidence is susceptible to more than one rational interpretation," the ALJ's conclusion will be upheld).

In sum, the ALJ cited specific, clear, and convincing reasons to discount Plaintiff's symptom claims.

**B. Medical Opinion Evidence**

Plaintiff faults the ALJ for improperly rejecting the opinions of treating physician Marven Cabling, M.D.; examining psychologist John Arnold, Ph.D.; and caregiver Yvonne Belcourt. ECF No. 17 at 5-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202.

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). The ALJ need only provide "germane reasons"

for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

### 1. Dr. Cabling[2]

Dr. Cabling examined Plaintiff on four occasions between July 2015 and June 20, 2016 and diagnosed Plaintiff with chronic pain syndrome from fibromyalgia, sleep apnea, and obesity. Tr. 1334. Dr. Cabling opined that Plaintiff's pain and stress would frequently interfere with his attention and concentration during a typical work day and estimated that Plaintiff could only sit for forty-five minutes, stand for thirty minutes, and walk for twenty minutes at a time. Tr. 1334-35. He also opined that Plaintiff needed to use a cane to walk, take one-two unscheduled breaks daily, be off task approximately fifteen-to-twenty percent of the workday, and miss at least two days per month due to his impairments. Tr. 1336-37.

The ALJ assigned this opinion partial weight. Tr. 32. Because Dr. Cabling's opinion was contradicted by Patricia Kraft Ph.D., Tr. 164-65, the ALJ

---

[2] The ALJ decision referred to Dr. Marven Cabling as "Marren Cablin."

was required to provide specific and legitimate reasons for rejecting Dr. Cabling's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ gave partial weight to Dr. Cabling's opinion because Dr. Cabling noted that his opined functional assessments were "estimates." Tr. 32. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. An ALJ may permissibly reject functional assessments that are not supported by any explanation, treatment notes, or findings. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Here, the ALJ noted that Dr. Cabling admitted that he was not able to provide a thorough evaluation of Plaintiff's functioning, noting that Dr. Cabling had only seen Plaintiff four times. Plaintiff submits the ALJ erred by discounting Dr. Cabling's opinion on the basis that Dr. Cabling had only treated Plaintiff four times. ECF No. 17 at 7. Plaintiff's argument is without merit because, regardless of the number of times Dr. Cabling treated Plaintiff, Dr. Cabling himself noted that his functional assessments were merely "estimates" and that he was "not sure" how long Plaintiff could stand and walk in an eight-hour workday. Tr. 1335-37. Thus, that Dr. Cabling's functional assessments were estimates was a valid basis to discount the opined functional assessments. The ALJ provided a specific and legitimate reason

ORDER - 18

supported by substantial evidence to discount Dr. Cabling's functional

assessments.

Second, the ALJ gave partial weight to Dr. Cabling's opinion that Plaintiff

would be absent two days a month and unable to complete an eight-hour workday

because these opinions were inconsistent with the objective medical evidence.  Tr.

32.  Relevant factors to evaluating any medical opinion include the amount of

relevant evidence that supports the opinion, the quality of the explanation provided

in the opinion, and the consistency of the medical opinion with the record as a

whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d

at 631.  An ALJ may choose to give more weight to an opinion that is more

consistent with the evidence in the record.  20 C.F.R. § 416.927(c)(4) ("[T]he more

consistent an opinion is with the record as a whole, the more weight we will give to

that opinion.").  Here, the imaging of Plaintiff's abdominal, chest, and knees either

were negative or showed only minor impairments.  Tr. 491, 496, 843, 1318.  The

medical evidence does not indicate that Plaintiff's physical or mental impairments,

singly or in combination, were of such severity to be disabling, when prescribed

medication was taken and recommended eating and exercise performed.  *See, e.g.*,

Tr. 468, 476, 487, 489, 524, 536, 543, 560, 567-68, 979, 1284, 1535, 1559, 1562.

To the extent there was conflicting evidence in the record, it was the ALJ's role to

weigh the evidence.  *See Morgan*, 169 F.3d at 599-600.  There is substantial

objective medical evidence conflicting with Dr. Cabling's assessments that Plaintiff was unable to complete an eight-hour work day without additional breaks and would be absent two days a month. The ALJ provided specific and legitimate reasons supported by substantial evidence to discount Dr. Cabling's opinion. Moreover, the ALJ incorporated exertional functional limitations into the RFC, including, limiting Plaintiff to sedentary work with a sit-stand option hourly for five minutes and permitting the use of a hand-held assistive device. Tr. 27. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions . . . where the assessment is consistent with restrictions identified in the medical testimony.").

    *2. Dr. Arnold*

    Dr. Arnold completed three Psychological/Psychiatric Evaluation forms, Tr. 505-08 (May 2013), Tr. 509-12 (April 2014), and Tr. 591-94 (January 2015). In 2013, Dr. Arnold diagnosed Plaintiff with dysthymic disorder; anxiety, not otherwise specified with social phobia features; and rule out somatoform disorder. Tr. 506. In 2014 and 2015, Dr. Arnold diagnosed Plaintiff with dysthymic disorder; anxiety, not otherwise specified with obsessive compulsive disorder and social phobia features; and pain disorder with both psychological factors and a general medical condition. Tr. 510, 592. Dr. Arnold opined that Plaintiff was

largely moderately limited in non-exertional basic work activities but markedly

limited in the following non-exertional basic work activities:

- 2013: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, Tr. 507;

- 2014: understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, Tr. 511; and

- 2015: understand, remember, and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; and complete a normal workday and workweek without interruptions from psychologically based symptoms, Tr. 593.

The ALJ assigned partial weight to these opinions. Tr. 31. Because Dr.

Arnold's opinion was contradicted by Nancy Winfrey, Ph.D., Tr. 107-19, the ALJ

was required to provide specific and legitimate reasons for rejecting Dr. Arnold's

opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Arnold's opinions because the medical

evidence was not consistent with Dr. Arnold's functional assessments. Tr. 31. An

ALJ may discredit physicians' opinions that are unsupported by the record as a

whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ rationally found that Plaintiff's examinations showed minimal loss of psychiatric functioning resulting from his impairments and therefore were inconsistent with Dr. Arnold's marked restrictions. Tr. 31; *see, e.g.*, Tr. 536 (noting that Plaintiff's appearance and affect were appropriate, attitude cooperative, attention gained, and judgment and insight good); Tr. 568 (noting that memory is intact, attitude cooperative, attention gained, reasoning, judgment, and insight good); Tr. 979, 1535 (noting normal affect, judgment, and mood); Tr. 883-84, 1004, 1036-39 (noting negative for depression, and alert, orientated, and cooperative with staff). This was a specific and legitimate reason supported by substantial evidence to discount Dr. Arnold's opinions.

Second, the ALJ discounted Dr. Arnold's opinions because the opined limitations were inconsistent with Dr. Arnold's mental status examinations of Plaintiff. Tr. 31. An ALJ may reject opinions that are internally inconsistent or not supported by that source's data. *Nguyen*, 100 F.3d at 1464; *Tommasetti*, 533 F.3d at 1041 (Incongruity between an opinion and treatment records or notes is a specific and legitimate reason to discount an opinion.). For instance, Plaintiff functioned within normal limits in all categories, including orientation, perception, concentration, abstract thoughts, insight, and judgment. Tr. 508, 512, 595. These normal abilities are inconsistent with Dr. Arnold's marked limitations. The

incongruity between Dr. Arnold's observations and opinions served as a legitimate and specific basis for the ALJ to discredit Dr. Arnold's opinions. And while Plaintiff's memory did not test within normal limits, Tr. 508, 512, 595, Plaintiff's memory deficient was incorporated into the RFC by limiting Plaintiff to jobs requiring simple work-related decisions and not at a production rate. Tr. 27. *See Stubbs-Danielson*, 539 F.3d at 1174.

Plaintiff submits that it is odd that the ALJ relied on the testimony of Dr. Winfrey over Dr. Arnold's opinion as Dr. Winfrey deferred "the question of [Plaintiff's] limitations of being off task to the treating physician." ECF No. 17 at 8. However, Dr. Winfrey deferred to a treating physician in regard to whether Plaintiff's physical conditions caused pain to such extent that he would be off task as opined by Dr. Arnold. Tr. 115-16. As discussed above, the objective medical evidence supports the ALJ's finding that Plaintiff's physical conditions are not so severe that they would markedly restrict his non-exertional abilities.

The ALJ articulated specific and legitimate reasons for discounting Dr. Arnold's opinions.

### 3. Ms. Belcourt

Ms. Belcourt served as Plaintiff's caregiver for the State of Washington as an independent provider from 2015 through May 1, 2016. Tr. 446. Ms. Belcourt helped Plaintiff with his housekeeping, medication management, shopping, and

minor personal care.  Tr. 446.  Ms. Belcourt reported that when she began,

Plaintiff's apartment was a mess because it was infested with bed bugs and

unclean, and Plaintiff had "hoarding problems since he was not that mobile and did

not leave his apartment that much because of medical issues."  Tr. 446.

Ms. Belcourt is considered an "other source" under the regulations, 20

C.F.R. § 416.913(d) (2013); thus, the ALJ was required to cite germane reasons for

rejecting this opinion.  *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

First, the ALJ discounted Ms. Belcourt's opinion because it was consistent

with Plaintiff's subjective complaints, which were in turn inconsistent with the

objective medical evidence.  Tr. 32.  Inconsistency with the medical evidence is a

germane reason to reject an opinion from an "other source."  *Bayliss*, 427 F.3d at

1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).  And an ALJ may

reject an "other source" opinion that essentially reproduces the claimant's

discounted testimony.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694

(9th Cir. 2009).  Here, because Ms. Belcourt's opinion about Plaintiff's inability to

care for his home, shop, and perform minor personal care are, for the reasons

summarized above, inconsistent with the level of impairment reflected in the

objective medical evidence, the ALJ properly discounted Ms. Belcourt's opinion.

*See Molina*, 674 F.3d at 1114; *Valentine*, 574 F.3d at 694.  This was a germane

reason to discount Ms. Belcourt's opinion.

ORDER - 24

Next, the ALJ also found the statements were essentially a repeat of Plaintiff's allegations, which had been properly rejected.  A non-medical opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604.  This was a germane reason to discount Ms. Belcourt's opinion.

Finally, the ALJ discounted Ms. Belcourt's opinion because she was not a disinterested party with medical training and expertise necessary to assess symptoms and their severity.  Tr. 32.  Defendant concedes these were not proper grounds to discount Ms. Belcourt's opinion.  ECF No. 18 at 10; *see Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996); 20 C.F.R. § 404.1513(d) (2013) (directing the ALJ to consider evidence from other sources, including caregivers, about the claimant's impairments and how they affect the claimant's ability to work).  Notwithstanding this concession, any error is harmless because the ALJ provided another germane reason, supported by substantial evidence, to discredit Ms. Belcourt's statements.  *See Molina,* 674 F.3d at 1115.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 25

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3. The Clerk's Office is to enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 28, 2018.

<u>s/Mary K. Dimke</u><br>
MARY K. DIMKE<br>
UNITED STATES MAGISTRATE JUDGE